UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

KIMBERLY CHAMBERS )
)
v. ) NO. 2:08-CV-242
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

# **O R D E R**

This Social Security matter is before the Court to consider the Report and Recommendation of the United States Magistrate Judge dated July 22, 2009. In that Report and Recommendation, the Magistrate Judge recommends that the plaintiff's motion for summary judgment, [Doc. 10], be granted to the extent that the case be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further evaluation of the limitations imposed by plaintiff's mental impairment, and defendant's motion for summary judgment, [Doc. 14], be denied to the extent that it asserts that the plaintiff has not shown a severe mental impairment.

1

The defendant has filed objections to this recommendation, [Doc. 17]. After careful and *de novo* consideration of the record as a whole, including the Administrative Transcript, and after careful consideration of the Report and Recommendation of the United States Magistrate Judge, and for the reasons set out in that Report and Recommendation, which are incorporated by reference herein, it is hereby **ORDERED** that the defendant's objections are **OVERRULED** and that this Report and Recommendation is **ADOPTED** and **APPROVED**, [Doc. 16], although for somewhat different reasons than those set forth by the Magistrate Judge. It is further **ORDERED** that the plaintiff's motion for summary judgment, [Doc. 10], is **GRANTED** to the extent that the case be remanded to the Commissioner under sentence four for further evaluation of the limitations imposed by plaintiff's mental impairment, and that defendant's motion for summary judgment, [Doc. 14], is **DENIED**.

The Magistrate Judge, in his Report and Recommendation, found that the ALJ erred at step two of the sequential five-step disability analysis by not finding that claimant suffered from a severe mental impairment. More specifically, the Magistrate Judge found that claimant had met the *de minimis* standard for showing the existence of a severe mental impairment and recommended remand of the case "for a determination of whether the plaintiff's impairments, including her mental

2

impairment, allow her to perform her past relevant work, and if not, whether a significant number of jobs exist which she can perform given her residual functional capacity." While acknowledging the *de minimis* standard which applies to step two, the Commissioner objects to remand because, even though the ALJ may have erred in not finding a severe mental impairment, he nevertheless continued the evaluation process, reviewed the entire record evidence, and properly concluded that claimant was not disabled.

The Commissioner correctly states the law. When an ALJ determines that one or more impairments is severe, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *5. And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find an additional severe impairment at step two "[does] not constitute reversible error." *Maziarz v. Sec'y of Health & Human Sers.*, 837 F.2d 240, 244 (6th Cir. 1987). Therefore, even if the ALJ's determination that claimant did not suffer a severe mental impairment is in error, the error is not reversible if the ALJ nevertheless considered all of claimant's impairments in the remaining steps.

While it appears clear from the decision of the ALJ that he was aware of the requirement that he consider all medically-determinable impairments together if

3

he found any one impairment severe, it does not appear that he actually did so. The evidence related to claimant's mental impairment is set forth in detail in the Report and Recommendation of the Magistrate Judge as follows:

> . . . .
>
> Plaintiff first presented to Dr. Susan Taub on November 7, 2005, with complaints of depression and anxiety. The diagnosis was major depressive disorder, single episode, severe without psychotic features, with a current global assessment of functioning [hereinafter "GAF"] of 50 and a highest past year GAF of 50 (Tr. 220-222). Plaintiff continued treatment by Dr. Taub from November 15, 2005 through June 12, 2006, during which time she was suffering anger, frustration, self assertion problems, self esteem issues, crying spells, abandonment issues, depression, hopelessness, irritability, mood problems, helplessness, dependency, fatigue, anxiety, disillusionment, family relational problems, memory problems, and comprehension and organization problems (Tr. 200- 219).
>
> . . . .
>
> Plaintiff underwent consultative exam by Dr. Steven Lawhon on March 15, 2006. Presenting complaints included depression, hypothyroidism, migraine headaches, diabetes, and back pain. Dr. Lawhon noted Plaintiff appears to be mildly to moderately anxious and depressed as evidenced by her affect, mood, and self-report. The diagnosis was depression due to medical reasons, with a present GAF of 58 and past GAF of 68. Dr. Lawhon opined Plaintiff's concentration and persistence is moderately limited and her work adaptation is mildly to moderately limited (Tr. 268-271).

Plaintiff underwent consultative exam by Dr. Marianne Filka on March 16, 2006. Dr. Filka noted review of numerous medical records and Plaintiff reported pain in her knees, ankles, low back, hips, shoulders, wrists, elbows, fingers, and feet, as well as morning stiffness in her neck, low back, and knees. Review of systems was positive for memory loss, rashes, migraine headaches, visual changes, ringing in the ears, spinning feeling, neck stiffness and pain, shortness of breath with exercise, swelling in the feet and ankles, coughing after laying down, fatigue, heartburn, diarrhea, constipation, hot flushes, pain in joints, neck pain, back pain, numbness, tingling, weakness, difficulty walking, difficulty gripping, broken bones, swelled joints, painful muscles, excessive thirst, difficulty with balance, anxiety, depression, easy crying, and poor sleep. The diagnoses were depression; arthralgias with possible undiagnosed rheumatoid arthritis, probably early rheumatoid arthritis; hypertension; non-insulin-dependent diabetes mellitus; history of muscle cramps with tender trigger points in multiple areas of the upper extremities, suspect myofascial pain syndrome if not outright fibromyalgia, particularly with a history of poor sleep; borderline sleep apnea; migraine headaches; hypothyroidism; bilateral carpal tunnel syndrome, status post surgery on the right with partial relief of symptoms; status post hysterectomy; two knee surgeries for torn mesnisci; tobaccoism; obesity; history of tension and sinus headaches; history of diarrhea and constipation; status post left wrist surgery for fracture; history of anxiety; and dental caries. Dr. Filka opined Plaintiff can do no lifting, pushing, and pulling over 30 pounds; no repetitive bending; no stopping, squatting, and kneeling; and no repetitive climbing. Dr. Filka further opined Plaintiff should be allowed to alternate her position from sitting to standing to walking as needed for comfort (Tr. 272-273).

. . . .

5

Plaintiff continued psychiatric treatment by Dr. Taub from June 26, 2006 through May 24, 2007. Problems noted during this time include depression, family conflict, anger, difficulty focusing, difficulty being around people, crying spells, and self esteem issues (Tr. 372-379).

. . . .

Plaintiff underwent post-hearing consultative exam by Dr. Bertram Henry on August 28, 2007. Plaintiff reported that she can't work because of difficulty standing for long periods of time, tolerating people, depression, and anxiety. Presenting complaints included cramps from the shoulders down to the toes; arthritis in the knees; history of bilateral carpal tunnel surgery which needs to be repeated; pain in the hands; numbness, tingling, and cramping in the feet; headaches; and history diabetes, thyroid disorder, anxiety, and depression. Review of symptoms was positive for nearsightedness; cramps and numbness in the hands; and pain, cramps, swelling, and arthritis in the legs. The diagnoses were major depressive disorder and other emotional abnormalities, significant obesity, diabetes, and possible diabetic neuropathy. Dr. Henry opined Plaintiff can lift/carry up to ten pounds frequently, 11 to 20 pounds occasionally; can sit for a total of five hours in an eight-hour workday; can stand for a total of two hours in an eighthour workday; can walk for a total of two hours in an eight-hour workday; can only occasionally climb, balance, stoop, kneel, crouch, and/or crawl; and can only occasionally tolerate exposure to unprotected heights (Tr. 421-431).

On January 14, 2008, Plaintiff underwent post-hearing consultative exam by Willard Sims, M.Ed. Plaintiff reported that she doesn't feel like getting up or doing anything; that she tolerates animals more than people, and half the time not them either; that she feels like staying in bed and in her pajamas all the time; that she

6

repeated the fifth grade and received special education services; that her appetite varies; and that she has experienced sleep disturbance, as well as decreased energy, anhedonia, isolation, decreased concentration, and irritability. Plaintiff further reported experiencing panic attacks with symptoms including a racing heartbeat, shakiness, shortness of breath, chest pain, irritability, muscle tension, and feeling on edge. WAIS-III testing yielded a Verbal IQ score of 85, a Performance IQ score of 86, and a Full Scale IQ score of 85, noted to fall in the low average range of intellectual functioning. In summary, Mr. Sims noted Plaintiff reported depressive symptoms including anhedonia, sleep and appetite disturbance, decreased energy, and decreased concentration, and the MMPI-2 indicated she has a history of affective instability and difficulties with interpersonal functioning. The diagnoses were major depressive disorder, recurrent, moderate; anxiety disorder, not otherwise specified; and personality disorder, not otherwise specified; with a GAF of 60 (Tr. 432-442).

The plaintiff's testimony at the administrative hearing is summarized as follows:

Plaintiff said that she had difficulty working because she could not work fast enough and the work was very painful (Tr. 472). She stated that she had pain from her back into her legs on a daily basis (Tr. 475). She claimed that she had trouble stooping and bending; took two to three naps a day, from two to fours hours each; could sit for less than thirty minutes before she had to stand; and could stand for about fifteen to thirty minutes before she had to sit or lie down (Tr. 476-77). She said that she was most comfortable lying down (Tr. 476-77). She took medication which dulled her pain, and it caused no side effects (Tr. 476).

She said that her mood swings also prevented her

7

> from rejoining the workforce (Tr. 472). Plaintiff testified that on good days, she was sociable and in a good mood, could converse with someone, and perhaps cook a meal or wash a stack of dishes (Tr. 473). She also said that on bad days, she was a recluse who stayed in her room and did not want to talk to anyone (Tr. 473). Her mood swings included feeling depressed and then angry (Tr. 474). She also said that she constantly lost or misplaced things in her home (Tr. 473). She said that she and her mother clashed a lot (Tr. 474).

Doc. 15, pg. 9.

While the ALJ noted the psychological findings of Susan Taub, Ph.D., Steven Lawhon, Psy.D., and William Sims, M.Ed., does not appear to have considered these findings in making his determination. The ALJ simply noted the various findings but offered no analysis or explanation for why these findings did not constitute a severe mental impairment or of the limitations that may have been imposed by these conditions. The ALJ did not further explain his rational for rejecting these opinions.

In sum, the ALJ, while acknowledging his responsibility to do so, did not clearly consider all of the record evidence and all of the plaintiff's impairments, both severe and non-severe, in arriving at his disability determination. Furthermore, the ALJ does not explain adequately his decision not to credit the findings regarding psychological examinations. The ALJ's opinion in this case simply does not indicate

8

that he considered all of the record evidence or that he provided a sufficient explanation for his findings in the case. For these reasons, the Magistrate Judge's recommendation is **AFFIRMED**.

So ordered.

E N T E R:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE